IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:10-cv-00040-RLV-DSC

LENOIR MALL, LLC,                )
                                 )
         Plaintiff,              )
                                 )
    v.                           )         **ORDER**
                                 )
STATE FARM FIRE AND CASUALTY     )
INSURANCE COMPANY,               )
                                 )
                                 )
         Defendant.              )
_____)

**THIS MATTER** is before the Court upon Defendant's Motion for Partial Summary Judgment. (Doc. 17.)

I. NATURE OF THE CASE

This civil case commenced on February 23, 2010, upon the filing of Plaintiff's Complaint in the Superior Court of Caldwell County, North Carolina. (Doc. 1-1 at 1–7.) Pursuant to the provisions of 28 U.S.C. §§ 1441 and 1446, Defendant filed its Notice of Removal to the United States District Court for the Western District of North Carolina on March 31, 2010. (Doc. 1.) Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332.

Plaintiff Lenoir Mall, LLC, is a limited-liability company organized and existing under the laws of the State of North Carolina. (Doc. 1-1 at 3.) Defendant State Farm Fire and Casualty Company ("State Farm") is a corporation organized and existing under the laws of the State of Illinois and has its principal place of business in Bloomington, Illinois. (*Id.*)

At all times relevant hereto, Plaintiff owned an insurance policy issued by Defendant, Policy Number 93-KF-5435-2, which provided insurance for Plaintiff's shopping mall, among

1

other things. (*Id.*) On or about February 10, 2008, the mall's ceiling was severely damaged. (Doc. 1-1 at 4.) Plaintiff contends a windstorm physically damaged the mall's commercial roof, resulting in interior water damage. (Doc. 18 at 1.) On June 16, 2008, Plaintiff filed a claim for damages pursuant to its policy with Defendant. (Doc. 1-1 at 4.) A State Farm claim representative initially inspected the property on July 17, 2008, after which Defendant retained a professional engineer who conducted a follow-on inspection on July 29, 2008. (Doc. 18 at 2–3.) Based on his inspection, the engineer determined that the roof failure was caused by "installation, maintenance, and repair issues which caused deterioration of the roofing materials." (Doc. 18 at 3.) Defendant denied coverage under the policy on October 2, 2008. (Doc. 1-1 at 4; Doc. 18 at 3.) Plaintiff then commissioned its own engineering firm, which conducted an inspection of the damaged roof and issued an April 10, 2009, assessment concluding that the roof was damaged by a windstorm in February of 2008. (Doc. 18 at 4.)

Counsel for both parties then coordinated a joint inspection, which occurred on December 16, 2009, after which, based on the resulting report, Defendant maintained its original coverage position. (Doc. 18 at 5.) Defendant declined to renew the policy on February 5, 2010, citing "[m]aintenance concerns, including roof deterioration and long term water damages." (Doc. 21-2 at 53.) Plaintiff filed this lawsuit on February 23, 2010. (Doc. 18 at 5.)

Plaintiff has asserted causes of action for breach of contract, bad-faith claim-settlement practices, and unfair trade practices. Defendant moved to dismiss Plaintiff's claim for bad-faith claim-settlement practices on April 7, 2010 (Doc. 2), and that claim was accordingly dismissed on August 23, 2011 (Doc. 16). In the instant Motion, Defendant seeks summary judgment on Plaintiff's claim for unfair trade practices.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial responsibility of informing the district court of the basis for its motion and identifying those particular portions of the record before the Court that the movant believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the event this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 322 n.3. Thus, the nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324. Rather, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a motion for summary judgment, the Court must view the evidence and any reasonable inferences arising therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III. DISCUSSON

North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") prohibits unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce. N.C. Gen. Stat. § 75-1.1. In order to establish a claim under the UDTPA, a

plaintiff must show that (1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. *Dalton v. Camp*, 548 S.E.2d 704, 711 (2001) (internal citation omitted). A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive. *Id*. The determination as to whether an act is unfair or deceptive is a question of law for the court. *Id*.

With regards to unfair claims-settlement practices, the General Assembly has prohibited the following via the Unfair Claim Settlement Practices Act:

> Committing or performing with such frequency as to indicate a general business practice of any of the following:
> . . .
> c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
> d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;
> . . .
> f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
> g. Compelling the insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured . . . .

N.C. Gen. Stat. § 58-63-15(11). "[P]rohibited acts listed in N.C. Gen. Stat. § 58–63–15(11) are also acts which are unfair, unscrupulous, and injurious to consumers, and . . . such acts therefore fall within the 'broader standards' of N.C. Gen. Stat. § 75–1.1." *Meadlock v. Am. Family Life Assur. Co.*, 729 S.E.2d 127, at *6 (N.C. Ct. App. 2012) (unpublished table decision) (quoting *Country Club of Johnston Cty., Inc. v. U.S. Fidelity & Guar. Co.*, 563 S.E.2d 269, 279 (N.C. Ct. App. 2002)). Indeed, "[v]iolation of any form of conduct listed in § 58-63-15(11) operates as a *per se* instance of unfair and deceptive trade practice under N.C. Gen. Stat. § 75-1.1." *Cash v. State Farm Mut. Auto. Ins. Co.*, 528 S.E.2d 372, 375 (N.C. Ct. App. 2000) (citations omitted).

4

Here, Plaintiff has premised its UDTPA claim on an alleged violation of the Unfair Claim Settlement Practices Act, specifically alleging that Defendant

> a. [f]ailed to adopt and implement reasonable, objective standards for the prompt investigation of claims arising under the Policy;
> b. [r]efused to pay Plaintiff's claim without having first conducted a reasonable investigation based upon all available information;
> c. [f]ailed to attempt in good faith to effectuate prompt, fair and equitable settlement of Plaintiff's claim after liability had become reasonably clear; and
> d. [c]ompelled Plaintiff to institute litigation to recover amounts due under the Policy by offering no amount in settlement of Plaintiff's claim, which is substantially less than the amount to be recovered in this action.

(Doc. 1-1 at 5.)

Defendant inspected the property approximately one month after the claim was filed, shortly thereafter retained an engineer to conduct a follow-on investigation, and then issued a report summarizing the findings less than two weeks later. (Doc. 18 at 2–3; Doc. 21 at 5.) When Plaintiff then submitted a report concluding that the roof was damaged by a wind event, Defendant resumed consideration of the claim by re-consulting its professional engineer, who found no grounds to recommend a change in coverage. (Doc. 18 at 4.) Defendant then agreed to conduct a joint inspection a year and a half after the original claim, in which it enlisted the services of an alternate professional engineer who also found no grounds for a change in coverage position. (Doc. 18 at 5.) Plaintiff's filings do not evince a dispute of this sequence of inspections conducted on the property.

Based on Defendant's reasonably quick response to the filed claim and diligence in conducting multiple inspections on the property, it cannot be said that Defendant has "[f]ail[ed] to adopt and implement reasonable standards for the prompt investigation of claims" or "[r]efus[ed] to pay claims without conducting a reasonable investigation based upon all available information." N.C. Gen. Stat. § 58-63-15(11)(c)–(d). Further, Defendant's actions in basing its

5

coverage position on the conclusions of multiple, independent, professional engineers; considering and responding to Plaintiff's damage assessment; and conducting a joint inspection with Plaintiff are, in fact, consistent with Defendant having "attempt[ed] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." N.C. Gen. Stat. § 58-63-15(11)(f).

Plaintiff claims that the reports produced by Plaintiff's and Defendant's experts are in conflict and this creates a genuine issue of material fact which must be resolved by a jury. (Doc. 21 at 9.) Plaintiff is correct in that there is a factual dispute regarding how the roof was damaged as it pertains to whether the loss was covered. However, merely reciting its breach of contract claim cannot help Plaintiff survive summary judgment under the banner of unfair and deceptive trade practices.

Plaintiff cites deposition testimony to the effect that Plaintiff caused an inspection of the roof by its field underwriter, Ralph Davis, shortly before issuance of the policy. (Doc. 21 at 3-4.) The resulting information tended to show the roof was in "average" to "good" condition. (*Id*.) Plaintiff contends that this conclusion led Defendant to issue the policy and made it more likely that the ceiling damage was caused by the wind event. (*Id*. at 10.) Thus, Plaintiff argues, Defendant's reliance on the subsequent, contrary expert reports in denying coverage was in bad faith. It would follow, according to Plaintiff, that an issue of fact is presented for jury consideration under N.C. Gen. Stat. § 75-1.1.

However, while the evidence concerning Mr. Davis's report may support Defendant's contractual claim, it does little to support a claim under Chapter 75. Its purpose was to evaluate the condition of the property in support of providing a "rush quote" in advance of Plaintiff's imminent closing on the purchase of the mall. (Doc. 21 at 10.) There is no evidence that Mr.

6

Davis is a professional engineer or that his report was otherwise comparable to the multiple evaluations done by engineers following the loss. Mr. Davis's narrative evaluation quoted on page four of Plaintiff's brief evinces a relatively superficial inspection of the property.

Where the jury will determine facts surrounding the cause of roof damage, it will be in determining whether State Farm improperly denied coverage and thus failed to fulfill its obligations under the insurance contract.

## IV. CONCLUSION

For the aforementioned reasons, there is no genuine dispute as to any material fact with respect to Plaintiff's cause of action for unfair or deceptive trade practices.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Partial Summary Judgment be **GRANTED**. (Doc. 17.)

Signed: August 1, 2013

Richard L. Voorhees
United States District Judge